## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JICARILLA APACHE NATION,

        Plaintiff,

vs.                                       No. CIV 02-1470 JB/RLP

RIO ARRIBA COUNTY; MOISES MORALES,
Rio Arriba County Commissioner; LORENZO VALDEZ,
Rio Arriba County Manager; AGAPITO CANDELARIA,
Rio Arriba County Chief Appraiser; and UNKNOWN
JOHN AND JANE DOES, each in both his or her
official and individual capacities; ANDREW CHAVEZ,
Rio Arriba County Commissioner; ELIAS CORIZ,
Rio Arriba County Commissioner; and ARTHUR
RODARTE, Rio Arriba County Assessor, each in his
official capacity only; and ALFREDO MONTOYA, RAY
TAFOYA, and DAVID SALAZAR, each in his individual
capacity only,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Second Motion for Summary

Judgment, filed April 20, 2004 (Doc. 92). The primary issue is whether Rio Arriba County and the

individual Defendants in their official capacity engaged in conduct, policy, custom or practice that

caused a violation of the Jicarilla Apache Nation's (the "Nation") right to equal protection under the

Fourteenth Amendment. Because the Court previously ruled that the individual Defendants in their

individual capacities did not violate the Constitution, there can be no liability for the County or the

individual Defendants in their official capacity. The Court, therefore, grants the Defendants' Second

Motion for Summary Judgment and dismisses the Nation's Complaint with prejudice.

## PROCEDURAL BACKGROUND

The Court granted the Defendants' Motion for Summary Judgment, filed April 15, 2003 (Doc. 19). See Order, filed March 30, 2004 (Doc. 85). The Court found that the Nation had not produced evidence of a constitutional violation and that the individual defendants were thus entitled to qualified immunity. See Memorandum Opinion, filed August 31, 2004 (Doc. 129). The Defendants filed a Second Motion for Summary Judgment and argue that the Court should grant summary judgment for Defendants Rio Arriba County, Andrew Chavez (Rio Arriba County Commissioner), Elias Coriz (Rio Arriba County Commissioner), Arthur Rodarte (Rio Arriba County Commissioner), Moises Morales (Rio Arriba County Commissioner), Lorenzo Valdez (Rio Arriba County Commissioner), and Agapito Candelaria (Rio Arriba County Chief Appraiser), each in their official capacities.

## SUMMARY JUDGMENT STANDARD

Rule 56 allows a court to grant summary judgment if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. at 323. The moving party can meet this burden by "pointing out to the court a lack of evidence as to an essential element of the non-movant's claim.

The burden then shifts to the non-movant to present specific facts, admissible at trial, from which a rational trier of fact could find for the non-movant."  Bewley v. City of Duncan, 149 F.3d 1190 (table), 1998 WL 314382, *4 (10th Cir. 1998)(citing Fed. R. Civ.  P. 56(c); Celotex Corp. v. Catrett, 477 U.S. at 324).

For the purposes of summary judgment, the court will assume the evidence of the non-moving party to be true, will resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court should, however, grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

## LEGAL ANALYSIS

**I.   THE DEFENDANTS MAY NOT BE HELD LIABLE WHERE THERE IS NO UNDERLYING CONSTITUTIONAL VIOLATION BY THE INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.**

The remaining individual defendants in this suit are named in their official capacities.  In an official capacity suit, the named officials are merely the agents of the governmental entity which is the real party in interest.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Langley v. Adams County, 987 F.2d 1473, 1477 n.2 (10th Cir. 1993).  Therefore, the Nation's suit against the individual defendants in their official capacities is really a suit against the County.

A governmental entity may not be held liable for constitutional violations where there is no underlying constitutional violation by any of its officers.  See Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993)(citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Apodaca

v. Rio Arriba County Sheriff's Dept., 905 F.2d 1445, 1447-48 (10th Cir. 1990); Watson v. City of

Kansas City, 857 F.2d 690, 697 (10th Cir. 1988)); Myers v. Oklahoma County Board of County

Commissioners, 151 F.3d 1313, 1316 (10th Cir. 1998) ("It is well established, therefore, that a

municipality cannot be liable under section 1983 for the acts of an employee who committed no

constitutional violation."); McCook v. Springer School District, 44 Fed Appx. 896, 910, 2002 WL

1788529 (10th Cir. 2002).  In Hinton v. City of Elwood, the United States Court of Appeals for the

Tenth Circuit explained "that where a municipality is 'sued only because [it was] thought legally

responsible' for the actions of its officers, it is 'inconceivable' to hold the municipality liable if its

officers inflict no constitutional harm, regardless of whether the municipality's policies might have

'authorized' such harm."  Hinton v. City of Elwood, 997 F.2d at  782 (quoting City of Los Angeles

v. Heller, 475 U.S. at 799).

 The Defendants assert that there no longer exists any genuine issue of material fact because

the Court previously held that the individual Defendants, in their individual capacities, did not violate

the Constitution. Thus, the Defendants assert it is improper to allow the suit to proceed against the

County and the individual Defendants in their official capacities.  The Nation argues that its claims

against the County and its officials should proceed because the Court ruled on whether the

Defendants were entitled to qualified immunity, but did not determine whether the Defendants

actually violated the Nation's constitutional rights.

 Because this Court previously granted summary judgment, and in doing so held that the

Nation had not produced evidence that the individual Defendants in their individual capacity violated

the Constitution, see Memorandum Opinion, filed August 31, 2004 (Doc. 129), there can be no

liability for County or the individual Defendants in their official capacities.  There is no underlying

constitutional violation.  The Court will therefore grant the Defendants' Second Motion for Summary

Judgment.

## II.    THE NATION HAS NOT SHOWN THAT ADDITIONAL DISCOVERY IS NECESSARY.

The Nation argues that the Court should deny the Defendants' Second Motion for Summary

Judgment because the Nation needs additional discovery to establish facts supporting its claims which

limited discovery thus far has precluded.    The Nation asserts it cannot present facts essential to

oppose the Defendants' motion because it "has not yet had an opportunity to pursue meaningful

discovery."  Plaintiff's Response to Defendants' Second Motion for Summary Judgment at 15, filed

July, 12, 2004 (Doc. 105).

Contrary to its assertion, the Nation has had opportunities for discovery.  At the outset of this

suit, the parties agreed to postpone initial disclosures and to stay discovery until after an adjudication

of the Defendants' affirmative defenses.  See Provisional Discovery Plan, filed January 2, 2003 (Doc.

9);  Plaintiff's and Named Defendants' Joint Motion to Set Briefing Schedule for Motion to Dismiss

and Revised Discovery Schedule, filed February 26, 2003 (Doc. 16); Order, filed March 3, 2003

(Doc. 17). The Defendants then moved for summary judgment based on qualified immunity.  See

Defendants' Motion for Summary Judgment, filed April 14, 2003 (Doc. 19); Defendants'

Memorandum Brief in Support of Their Motion for Summary Judgment, filed April 15, 2003 (Doc.

21).  The Nation then decided it wanted to do discovery to respond to the motion for summary

judgment in July of 2003. The Honorable Martha Vasquez, now Chief United States District Judge,

granted the Plaintiff's Unopposed Motion to Stay Consideration of Defendants Motion for Summary

Judgment on the Existence of Intentional or Purposeful Discrimination Pending Discovery on that

Issue, filed July 14, 2003 (Doc. 31).  See Order Staying Consideration of Defendants Motion for Summary Judgment on the Existence of Intentional or Purposeful Discrimination Pending Discovery on that Issue, filed July 18, 2003 (Doc. 36).

Subsequently, the Nation served its first set of requests for production on September 24, 2003.  See Certificate of Service For Plaintiff's First Request for Production of Documents To All Named Defendants, filed September 25. 2003 (Doc. 42). The Defendants had almost two months to respond to the Nation's first set of requests for production.  See Stipulated Order Extending Discovery and Briefing Schedules, filed October 21, 2003 (Doc. 46).  The Defendants served 226 responsive documents on November 20, 2003.  See Certificate of Service, filed November 20, 2004 (Doc. 53).

Following the Court's March 30, 2004 ruling on the Defendants' first summary judgment motion and the Nation's motion for partial summary judgment, see Order, filed March 30, 2004 (Doc. 85); Amended Order, filed March 31, 2004 (Doc. 86), the parties agreed to, and the Court ordered, a stay of discovery pending adjudication of a second dispositive motion that the Defendants intended to file, and set a briefing schedule for that second motion for summary judgment.  See Joint Motion to Set Briefing Schedule for Dispositive Motion and Revised Discovery Schedule, filed April 7, 2004 (Doc. 90); Order Setting Briefing Schedule for Dispositive Motion and Revised Discovery Schedule, filed April 9, 2004 (Doc. 91). The Nation, however, soon changed its mind about the desirability of the stay and filed an Expedited Rule 56(f) Motion to Stay Proceedings on Defendants' Second Motion for Summary Judgment, filed June 30, 2004 (Doc. 97).

In response to that motion, the Court allowed the Nation to raise its rule 56(f) concerns and issues in opposition to the Defendants' motion and lifted the stay of discovery, but denied the

Nation's motion to stay the summary judgment proceedings.  See Order, filed July 14, 2004 (Doc. 110).  The Nation subsequently served a substantial amount of discovery. The County produced 170 pages of relevant documents at the Rio Arriba County Assessor's Office in Tierra Amarilla, New Mexico on July 29, 2004 and 283 of relevant documents at the Rio Arriba County Assessor's Office in Espanola, New Mexico, on July 30, 2004. See Plaintiff's Expedited Motion for Leave to File Plaintiff's Supplemental Disputed and Additional Material Facts in Response to Defendants' Second Motion for Summary Judgment at 2, filed August 26, 2004 (Doc. 136).  Those 453 pages of relevant documents were responsive to the Nation's first set of requests for production.  The Defendants had not previously produced these documents in response to the Nation's first requests. See id. at 2.

The Nation now proposes further discovery.  Specifically, the Nation proposes discovery regarding the Defendants' improper subjective intent and the existence of a municipal policy, practice, or custom to discriminate against the Nation.

The Nation has not convinced the Court that additional discovery is necessary to decide the limited  issue which remains before the Court.  The Court previously determined that the individual Defendants, in their individual capacity, did not violate the Constitution.  Because there is no underlying constitutional violation, there can be no liability for the County or the individual Defendants in their official capacity.  Thus, the Nation has not convinced the Court it needs to allow more discovery or needs to consider additional discovery to grant the Defendants' Second Motion for Summary Judgment.

III.    **THE PLAINTIFF'S SUPPLEMENTAL DISPUTED AND ADDITIONAL FACTS AND PROPOSED DISCOVERY DO NOT CHANGE THE COURT'S PRIOR DECISION TO GRANT THE INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**

The Court granted the Plaintiff's Expedited Motion for Leave to File Plaintiff's Supplemental Disputed and Additional Material Facts in Response to Defendants' Second Motion for Summary Judgment.  Even though Hinton v. City of Elwood and similar cases from the Supreme Court and from the Tenth Circuit would support that, once the Court found there was no constitutional violation, further inquiry is closed, the Court, to be as fair as possible to the Nation, reviewed the Nation's new materials and its proposed areas of discovery.  Upon review, the Court concludes these supplemental materials and the proposed discovery do not change the Court's decision to grant the Defendants' Second Motion for Summary Judgment and do not support the Nation's contention that the Court should have denied the Defendants' Motion for Summary Judgment.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Once a defendant raises the qualified immunity defense, the plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred."  Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988).  If the plaintiff meets this two-part burden, the defendant "assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute."  Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992).

The Nation alleges the County violated the Equal Protection Clause of the Fourteenth Amendment under a "class of one theory."  To show a constitutional violation under the

8

"class of one" theory, the Nation must establish two elements: (i) that the Defendants acted with discriminatory intent; and (ii) that the Defendants treated the Nation differently from others who were similarly situated without a rational basis for doing so. See Bartell v. Aurora Public Schools, 263 F.3d 1143, 1149 (10th Cir. 2001).  To establish discriminatory intent, the Nation must show that the County's action "was a spiteful effort to get [the Nation] for reasons wholly unrelated to any legitimate state objective." Id.

The Tenth Circuit has articulated a modified qualified immunity test for analyzing a summary judgment motion based on qualified immunity when subjective intent is an element of a constitutional violation claim. See McCook v. Springer School District, 44 Fed. Appx. 896, 905 (10th Cir. 2002)(unpublished). "First, Defendants must make a prima facie showing of the objective reasonableness of the challenged conduct.  If Defendants meet their burden of showing objective reasonableness, we next consider whether the [Plaintiff] satisfied the burden of presenting evidence Defendants acted on the basis of a culpable subjective state of mind." Id. (internal quotation marks and citations omitted).  In this case, the Court must consider whether the County and the individual defendants in their official capacities have shown that their actions were objectively reasonable.  The Court must then consider whether the Nation has produced "specific evidence" that the County and the individual defendants in their official capacity acted with a discriminatory intent.[1] See The Gehl

---

[1] The Court's Memorandum Opinion on the Defendants' Motion for Summary Judgment, filed April 15, 2003 (Doc. 19), and the Plaintiff's Motion for Partial Summary Judgment, filed on July 14, 2003 (Doc. 32), stated: "While, generally, the first step in the qualified immunity analysis is whether the plaintiff has established a constitutional violation, the Tenth Circuit has modified that test when subjective intent is one of the essential elements of the constitutional violation alleged." Memorandum Opinion at 26, filed August 31, 2004 (Doc. 131).  Upon review, the Court believes a more accurate statement of law is as follows: The first step in the qualified immunity analysis is whether the plaintiff has established a constitutional violation.  When that inquiry involves analysis of a subjective intent element, the court must make an initial inquiry into the objective reasonableness

Group v. Koby, 63 F.3d 1528, 1537 (10th Cir. 1995)("Defendants have established that their conduct was objectively reasonable, and the burden then shifted to the Plaintiffs to support their allegation that Defendants singled them out for prosecution in retaliation for and to suppress their legal and constitutionally protected solicitation efforts."); McCook v. Springer School District, 44 Fed. Appx. at 905 (applying modified qualified immunity test to third element of First Amendment retaliation claim: whether adverse action was substantially motivated by exercise of constitutionally protected conduct); Mimics, Inc. v. Village of Angelfire, 277 F. Supp. 2d 1131, 1149, 1151 (D. N.M. 2003).

The Court previously concluded that the Defendants' actions with regard to the reassessment of the Ranch for property tax purposes were objectively reasonable. See Memorandum Opinion at 42, filed August 31, 2004 (Doc. 139).  The Court also concluded the Nation had not presented evidence that the Defendants acted with a culpable state of mind, see id. at 42, 43, and therefore failed to rebut the Court's finding of objective reasonableness.  Further, the Court determined that the Nation had not shown a genuine issue of material fact that the Defendants had treated the Nation differently from others who were similarly situated without a rational basis for doing so.  See id. at 45. The Court concludes that the Nation's Supplemental Disputed and Additional Material Facts do not change those decisions.

Among the documents recently produced in response to the Nation's first set of requests for production was a November 2001 letter from the New Mexico Department of Taxation and Revenue

_____

of the defendant's action.  If the defendant meets his burden of showing objective reasonableness, the court then considers whether the plaintiff has presented evidence of subjective intent.  See The Gehl Group v. Koby, 63 F.3d 1528, 1537 (10th Cir. 1995); McCook v. Springer School District, 44 Fed. Appx. at 905; Mimics, Inc. v. Village of Angelfire, 277 F. Supp. 2d 1131, 1149, 1151 (D. N.M. 2003). Despite this difference in the description of the law, the Court believes the Memorandum Opinion on Defendants' Motion for Summary Judgment and the Plaintiff's Motion for Partial Summary Judgment correctly analyzes the issues at hand.

(the "Department") to the Rio Arriba County Assessor, analyzing the possible loss in revenue if the Chama Ranch was removed from the County's tax rolls.  See Letter from Allen Maura , Senior Economist, N.M. Taxation and Revenue Dep't,  to David Salazar (dated November 14, 2001).  The Nation asserts that the Defendants disregarded the guidance it received in the November 2001 letter and misrepresented to the United States Department of the Interior that acquisition of the Chama Ranch by the United States in trust for the Nation would impose significant tax impacts on the County.  The Nation argues that this misrepresentation is material to whether the Defendants intentionally discriminated against the Nation regarding the assessment of property taxes.  Even if, assuming, *arguendo*, that the Defendants intentionally misrepresented the impact to the County if the United States acquired the Chama Ranch in trust, that misrepresentation does not necessarily indicate a discriminatory motive in reassessing the tax status of the Chama Ranch.  The letter is not evidence that the County's action was "wholly unrelated to any legitimate state objective." Bartell v. Aurora Public Schools, 263 F.3d at 1149.

The Nation submits a composite map illustrating the location of the Chama Ranch and four surrounding ranches.  See U.S. Bureau of Land Management, Surface Management Status Map: Chama, New Mexico (2001). The Nation explains that this map is demonstrative evidence provided for the convenience of the Court.  The Court finds no evidence of a discriminatory motive based on this map or that it undermines its earlier conclusion that the other ranches were not similarly situated or that there was a rational basis for treating the ranches differently.

The Nation offers the Declaration of Peter J. Holzem as evidence of the Defendants' knowledge of the well-known, widespread, and long-standing nature of elk hunting activities at ranches within Rio Arriba County. See Declaration of Peter Holzem, ¶ 7-8 , at 2 (August 18, 2004).

11

This evidence does not change the Court's conclusion that the other ranches were not sufficiently similarly situated to the Chama Ranch.  Neither does this evidence show discriminatory intent regarding the Defendants' reassessment of the Chama Ranch.

The Nation also points to the Declaration of Peter J. Holzem and the Resolution of the Rio Arriba County Commissioners as evidence that the Defendants have increased the property tax for the Chama Ranch based on long-standing animosity toward the Nation, based on a desire to prevent the Chama Ranch from being conveyed to the United States in trust for the Nation, as part of ongoing efforts by County officials to restore land within the former Tierra Amarilla Land Grant to local Hispanic families. This evidence may demonstrate the Defendants' belief that the Chama Ranch is part of the Tierra Amarilla land grant. It does not, however, specifically show that the decisions regarding the tax assessment of the Chama Ranch were "a spiteful effort to get [the Nation] for reasons wholly unrelated to any legitimate state objective." Bartell v. Aurora Public Schools, 263 F.3d at 1149.

The Nation further asserts that Reynolds Smith, the Deputy County Assessor and a material witness for the Defendants, likely committed perjury in his affidavit of September 25, 2003 insofar as Mr. Smith asserted that "the Assessor's office has not been made aware of any indication that the Quinlan . . . ranch[] ha[s] been improperly assessed." Plaintiff's Supplemental Disputed and Additional Material Facts at 4.  The Nation points to a January 3, 2003 memorandum in the Defendants' Quinlin Ranch file stating the Quinlin Ranch no longer warrants an agricultural classification.  The memorandum is not signed and it is titled "Memo for Record."  There is no indication as to who wrote the memorandum or who received it. Even if this evidence establishes that Smith perjured himself regarding the Quinlin Ranch, the memorandum does not address the classification of the Chama Ranch.  It does not indicate that there was a discriminatory intent behind

12

the classification of the Chama Ranch.

The additional evidence offered by the Nation does not show that the Defendants acted with an impermissible discriminatory motive. The Court concludes that the Nation's Supplemental Disputed and Additional Material Facts do not change the Court's conclusion that there was no constitutional violation by the Defendants in their individual capacity. Therefore, there can be no liability for the County or the individual defendants in their official capacities.

**IT IS ORDERED** that the Defendants' Second Motion for Summary Judgment is granted and the Nation's complaint is dismissed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Daniel I.S.J. Rey-Bear
Jennifer J. Dumas
Nordhaus Haltom Taylor Taradash & Bladh, LLP
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

R. Galen Reimer
Harriet Hickman
Gallagher, Casados & Mann, P.C.
Albuquerque, New Mexico

   *Attorneys for the Defendants*